**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| **RICK ALLEN DECK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**INDIANA STATE OF, INDIANA ATTORNEY GENERAL, ENGLISH, BALLARD, HEISHMAN, MURRAY, and BRENTON-ORTIS,**<br><br>**Defendants.** | **CAUSE NO. 3:25-CV-769-JTM-JEM** |

**OPINION AND ORDER**

Rick Allen Deck, a prisoner without a lawyer, filed an amended complaint about an alleged failure to protect him when he was housed at Miami Correctional Facility. (DE # 22.) "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

The allegations in Deck's amended complaint are not materially different from those in his earlier complaint. Deck alleges that, following a conviction for child solicitation, he was sent to Miami Correctional Facility ("MCF"). Deck was well known at MCF from a previous term of incarceration. He is also a former member of the Aryan

Brotherhood. Initially, everything was fine, but once the Aryan Brotherhood learned that Deck had been convicted of child solicitation, Deck claims they said they were going to kill him. At this time, Deck filled out a protective custody form. On the form, he said that the Aryan Brotherhood was going to kill him. He does not indicate if he identified a specific individual or individuals who threatened him. He also does not indicate if he provided any further details about the threat.

After Deck requested protective custody, he was moved to A dorm, which is a lock down dorm, pending a decision on his request. The Protective Custody Committee consisted of Dr. Ballard, Officer Heishman, Case Manager Murray, and Lt. Brenton-Ortis. The request for protective custody was denied, and Deck was sent to P dorm.

There were three members of the Aryan Brotherhood in P dorm. Deck alleges that he was assaulted in that dorm and had a black eye. Deck does not indicate who assaulted him or if this assault was somehow linked to the Aryan Brotherhood. He told staff about the assault, and they moved him to the other side of P dorm. There were two members of the Aryan Brotherhood in this location. They tried to make Deck pay "rent." (DE # 22 at 4.) He filled out another request for protective custody explaining that the Aryan Brotherhood was after him and they were going to kill him. The Protective Custody Committee sent Deck back to A dorm pending a review of his request. His request for protective custody was again denied, but he was moved to a program dorm where there were no inmates affiliated with the Aryan Brotherhood. Deck was safe there for a while, but then he started getting threats. The nature of these threats is unclear from Deck's amended complaint. Deck got a knife to protect himself,

but he got caught with it and kicked out of the program. This time he was sent to J dorm.

There were three members of the Aryan Brotherhood in J dorm. They threatened him and Deck filed another request for protective custody. Deck does not indicate if he identified the individual or individuals who threatened him or if he provided any additional information about the nature of the threat. This request was also denied.

Deck was sent to K dorm, which also housed inmates affiliated with the Aryan Brotherhood. He filled out another protective custody form and he was again sent to A dorm. Deck does not indicate if he was threatened while in this dorm. It too was denied.

Deck was sent back to P dorm, where two inmates affiliated with the Aryan Brotherhood were living: Tommy Ray and Nazi Joe. Deck's cellmate spent the night in the room of one of the inmates affiliated with the Aryan Brotherhood. The next day, Deck's cellmate attacked Deck with a knife. Deck blocked the attack, but he suffered a stab wound in his left hand. He again sought protective custody. In this form he explained that the Aryan Brotherhood got someone else to try to kill him. Deck was moved back to A dorm. The request was denied and Deck was sent to B dorm. A week later, Deck was assaulted again. He filed yet another request for protective custody. Deck does not provide any information about the nature of the assault. He also does not indicate if he identified the individual who assaulted him or if this individual was a member of the Aryan Brotherhood. In this request, Deck indicated he would like to go

to restrictive housing so he would be safe, and he might assault staff so they leave him there, or they could transfer him.

Deck was in restrictive housing for a week before they sent him back to A dorm pending a transfer. He is now housed at a different facility. Deck alleges that prison officials kept putting him in harm's way without taking the time to see if the inmates in the different dorms might pose a threat to him.

The Eighth Amendment imposes a duty on prison officials to "protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). However, "prisons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). Therefore, a failure-to-protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must allege that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). To be held liable, a defendant must have "acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to [plaintiff's] health or safety, yet failed to take appropriate steps to protect him from the specific danger." *Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008). But just "poor judgment" isn't enough. There must be a conscious disregard of a known risk. *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). Thus, "a complaint that identifies a specific, credible, and

imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015).

Deck has described three instances in which he was injured by other inmates. Before each of those incidents, Deck sought protective custody and was removed to another dorm. The Protective Custody Committee knew that Deck claimed to be a former member of the Aryan Brotherhood. The Protective Custody Committee knew that Deck was serving a sentence for sexual exploitation of a minor. They also knew that Deck reported that members of the Aryan Brotherhood indicated they planned to kill him. It remains unclear if Deck identified the individual or individuals who relayed these threats or the details of the communications. It is also unclear if Deck identified the individual that punched him and if this individual was affiliated with the Aryan Brotherhood. And, for the third and final alleged assault, Deck has provided no information about his alleged attacker or even the nature of his attack. Without additional details, the court cannot find that Deck has stated a failure to protect claim against the members of the Protective Custody Committee.

Deck has also named the Indiana Department of Correction ("IDOC") as a defendant. Claims arising under the Eighth Amendment must be brought pursuant to 42 U.S.C. § 1983, which provides a cause of action for constitutional violations by people acting under color of state law. *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). The IDOC is an arm of the state and, as such, cannot be sued in federal court under 42 U.S.C. § 1983. *See Wagoner v. Lemmon,* 778 F.3d 586, 592 (7th Cir. 2015). States and state

agencies are not "persons" for the purposes of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). Therefore, Deck cannot proceed on any Eighth Amendment claim against the IDOC.

Deck also named the Indiana Attorney General and Superintendent English as defendants. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* at 596. A supervisor can also be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Because Deck has not described how either the Attorney General or English was personally involved in the alleged wrongdoing, he has not stated a claim against them.

The amended complaint does not state a claim for which relief can be granted. Deck has already been granted an opportunity to amend his complaint once. Nonetheless, if Deck believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page

above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) **GRANTS** Rick Allen Deck until **December 7, 2026**, to file an amended complaint; and

(2) **CAUTIONS** Rick Allen Deck that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

**SO ORDERED.**

Date: November 9, 2026

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT